UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-01270-SRC |
| | ) | |
| ERIN HALBERT et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Memorandum and Order</u>**

Maurice Campbell, a self-represented litigant, brings this action under 42 U.S.C. § 1983, asserting claims arising from his April 2024 arrest and subsequent confinement at the St. Louis City Justice Center and Eastern Reception, Diagnostic and Correctional Center.  Doc. 1 at 10–16 (The Court cites to page numbers as assigned by CM/ECF.).  Campbell moves for leave to proceed *in forma pauperis*, doc. 2, and for appointment of counsel, doc. 3.  The Court grants Campbell's motion to proceed *in forma pauperis* and waives the filing fee.  But for the reasons set forth below, the Court dismisses the complaint under 28 U.S.C. § 1915(e)(2)(B) and denies the motion for appointment of counsel as moot.

I.      **Background**

Campbell names as defendants Parole Analyst Erin Halbert, Parole Officer Misti Gimlin, Parole Supervisor Kellee Chambers, Hearing Officer Carol Lyree Price, the Missouri Board of Probation and Parole, the Commissioner of the St. Louis City Justice Center, the Warden of the Eastern Reception, Diagnostic and Correctional Center ("ERDCC"), and the Records Office of ERDCC.  Doc. 1 at 3–6.  He presents his case in a lengthy, first-person narrative that covers a broad range of events occurring at three distinct institutions.  Doc. 1 at 10–16.  Although

Campbell names eight defendants, he largely (1) pleads collective allegations without tying specific conduct to particular defendants or (2) pleads specific conduct against unnamed persons whom he does not name as defendants.  *See id.*

According to the complaint, in February 2024, Officer Gimlin spoke with Campbell about a "field violation report" dated February 5, 2024 regarding a "domestic assault and arrest charge" from 2022.  *Id.* at 10.  Campbell says he "warned" Gimlin of his innocence regarding the underlying domestic-assault allegations.  *Id.*  He further alleges that in December 2023, Analyst Halbert emailed false information to Gimlin about Campbell's April 2022 arrest.  *Id.*  Campbell also states that Supervisor Chambers approved a "false warrant, false arrest[,] and false imprisonment with an issuance date of 2/5/2024."  *Id.*

On April 1, 2024, Campbell asserts he attended a regular parole appointment with Gimlin.  *Id.*  After receiving his next appointment date, he alleges that three unidentified white male officers entered the office and arrested him.  *Id.*  He says the officers claimed to have a warrant and that one cut the inside of his right wrist while handcuffing him.  *Id.*  According to Campbell, the officers denied his request to see the warrant and did not advise him of his *Miranda* rights.  *Id.*

Campbell reports carrying legal documents at the time of the arrest, including a copy of a dismissal order dated March 27, 2024.  *Id.*  He alleges he asked Gimlin to retrieve that order and give it to her supervisor.  *Id.*  He further alleges officers led him to a back room, searched his belongings, and transported him to the St. Louis City Justice Center.  *Id*. at 10–11.  On arrival, an officer searched him again.  *Id.* at 11.  He then requested and received an alcohol pad for his bleeding wrist, and an officer told him he would "see medical."  *Id.*

Later that day, an unidentified officer escorted Campbell for processing. *Id.* at 11–12. Campbell alleges he told custody staff that false information led to his detention and that the arrest warrant was "false, bogus[,] and invalid." *Id.* at 12.

The remainder of the complaint recounts a broad series of events that allegedly occurred at the St. Louis City Justice Center and ERDCC. *Id.* at 12–16. At the Justice Center, Campbell alleges staff delayed or denied prescribed medications despite his repeated requests, and that officials required a second medical intake form after they were unable to locate the original. *Id.* at 12–13. He also alleges staff mishandled his grievances regarding medical neglect and the release of his personal property. *Id.* at 13–14. Campbell further alleges that officials "trafficked" him to ERDCC on April 17, 2024. *Id.* at 13.

At ERDCC, Campbell alleges intake staff restrained him in tight chains during transport, performed a strip search, sprayed him with chemicals before a shower, issued "nasty food" and dirty clothing and bedding, exposed him to pervasive smoke and odors in housing, gave him "unhealthy meals," failed to respond to medical request forms, and did not return his property upon release. *Id.* at 14–16. After release, Campbell says he incurred replacement costs for his property, discovered damage to his vehicle, and reported ongoing parole-related issues. *Id.* at 15–16.

Campbell characterizes defendants' conduct as kidnapping, racism, trafficking, medical neglect, retaliation, discrimination, corporal punishment, abuse of process, oppression, abuse of a patient, failure to intervene, conspiracy to deprive him of his civil and human rights, and theft of property. *Id.* at 16. He asserts that defendants violated his First, Fourth, Fifth, and Eighth Amendment rights. *See id.* at 7. And he seeks $3 million in damages and a permanent injunction against the Board of Probation and Parole. *Id.* at 9.

3

## II.  Standard

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  In doing so, the Court must "accept as true the facts alleged, but not legal conclusions."  *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented litigant's complaint under section 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).  A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal

4

framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  The Court need not assume unalleged facts.  *Stone*, 364 F.3d at 915 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).  Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### III.    Discussion

#### A.    State entities

Campbell names the Missouri Board of Probation and Parole and the Records Office of ERDCC as defendants.  Doc. 1 at 5–6.  But section 1983 authorizes suits only against a "person" acting under color of state law.  *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).  Neither a state nor its agencies qualify as "persons" under section 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999).  And the Eleventh Amendment bars claims against the state and its agencies absent waiver or valid congressional abrogation of immunity.  *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 743–44 (8th Cir. 1998).  Campbell alleges no waiver or abrogation.  Because the Board and the Records Office are state entities, the Court dismisses Campbell's claims against them under section 1915(e)(2)(B).

#### B.    Individual defendants

Campbell names as defendants the Commissioner of the St. Louis City Justice Center, the Warden of ERDCC, Parole Analyst Erin Halbert, Parole Officer Misti Gimlin, Parole Supervisor Kellee Chambers, and Hearing Officer Carol Lyree Price.  Doc. 1 at 3–5.  Because Campbell

5

does not clearly delineate capacity, the Court construes the complaint to assert both individual- and official-capacity claims against each defendant.  *See S.A.A. v. Geisler*, 127 F.4th 1133, 1139–40 (8th Cir. 2025) (explaining that the key inquiry in a capacity determination is whether the complaint puts the defendant on notice that his personal liability is at stake).

> i.    **Official-capacity claims**

Courts treat official-capacity claims against governmental employees as claims against the governmental entity itself.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  To state municipal liability under section 1983, a plaintiff must allege that the municipality's official policy, unofficial custom, or deliberately indifferent failure to train or supervise caused the asserted injury.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  Here, Campbell alleges isolated misconduct by mostly unidentified staff and pleads no facts identifying a City policy, a widespread custom, or training deficiencies that caused his alleged harm.  *See* doc. 1 at 11–16. He therefore fails to state a plausible official-capacity claim against the Commissioner of the St. Louis City Justice Center.  *See Mick*, 883 F.3d at 1079.

Campbell's official-capacity claims against parole and correctional officials carry the same defects as his claims against the state entities:  the State is not a "person" under section 1983, *Will*, 491 U.S. at 71, and absent waiver or valid abrogation, it enjoys sovereign immunity, *Morstad*, 147 F.3d at 744.  To the extent Campbell seeks prospective injunctive relief, doc. 1 at 9, the complaint does not plausibly allege an ongoing federal violation traceable to a named official with authority to provide the requested relief.  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).  The Court therefore dismisses all official-capacity claims under section 1915(e)(2)(B).

### ii.     Individual-capacity claims

Section 1983 requires a causal link between each defendant's own conduct and the alleged violation.  *See White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).  Campbell does not allege defendant-specific facts establishing each defendant's personal involvement in a constitutional deprivation.

Campbell pleads no concrete facts tying either the Commissioner or the Warden to any alleged misconduct.  *See generally* doc. 1.  Conclusory allegations about their supervisory roles are insufficient.  *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability" (citation omitted)); *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." (citation omitted)).  Similarly, Campbell pleads only that Halbert emailed false information to Gimlin and that Chambers approved a "false warrant, false arrest[,] and false imprisonment."  Doc. 1 at 10.  Absent facts showing knowledge, intent, or direct participation, these allegations do not plausibly link Halbert or Chambers to a constitutional violation.  *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

As to Gimlin, although Campbell alleges she witnessed his arrest and interacted with him, *see* doc. 1 at 10–11, the complaint does not plausibly connect her to a clearly pleaded constitutional theory.  Campbell's collective assertions that officials "knew or should have known" that Missouri was prosecuting a case against him "where [he] was never charged, arrested[,] [or] jailed by a police officer," *see id.* at 13, do not satisfy that requirement, either.

*See White*, 865 F.3d at 1081; *Madewell*, 909 F.2d at 1208.  And Campbell makes no factual allegations against Price.  *See generally* doc. 1.

To the extent Campbell challenges any defendant's parole-related decision-making itself, those functions are quasi-judicial and protected by absolute immunity.  *See Figg v. Russell*, 433 F.3d 593, 598–600 (8th Cir. 2006) (recognizing absolute immunity for parole board members performing adjudicatory parole functions and for a parole agent acting as an extension of the board in carrying out those functions).  The Court therefore dismisses Campbell's individual-capacity claims under section 1915(e)(2)(B).

## IV.    Conclusion

For these reasons, the Court grants Campbell's [2] Motion for Leave to Proceed *in forma pauperis* and dismisses this case without prejudice under 28 U.S.C. § 1915(e)(2)(B).  A separate Order of Dismissal accompanies this Memorandum and Order.  The Court certifies that an appeal from this dismissal would not be taken in good faith.  Finally, the Court denies as moot Campbell's [3] Motion for Appointment of Counsel.

So ordered this 27th day of March 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

8